PENELOPE McGILL et al. *v.* DAVID BONE.

Where M. was sued as a debtor to the estate of D. in Louisiana, and pending that suit B., a judgment creditor of the estate of D. in this State, sued out a writ of garnishment against M., who answered, acknowledging her indebtedness to the estate of D., and a judgment was rendered against her in this State on the garnishment; and in the mean time, a judgment was also rendered against her (M.) in favor of D.'s estate in Louisiana: — *Held,* that M. has no right to come into equity for relief against the judgment rendered against her in this State, until it is attempted to be used to her prejudice.

If B. agreed that the judgment in his favor against M. should not be used to her prejudice, having reference to the adverse claim in Louisiana, he is at liberty, if not under an obligation, to take such future steps as would prevent the payment of his judgment by M. from working an injury to her.

On appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

John Ducker died in 1837, leaving property in Jefferson county, Mississippi, and also in Concordia parish, Louisiana. That Thomas A. Compton was appointed his administrator in Mississippi, and Edward Sparrow his curator in Louisiana. That in 1848, Sparrow, as curator, made a sale of Ducker's property in Louisiana; a large portion of which was purchased by Penelope McGill, who gave her notes for it to Sparrow, as curator. That, after various payments, she was sued by Sparrow, and judgment rendered against her in the supreme court of Louisiana, for upwards of $60,000, on the 24th April, 1849. That, at December term, 1838, of the Jefferson county circuit court, the Commercial Bank of Rodney recovered a judgment against Compton, administrator of Ducker, for $6,769, on which execution was returned *nulla bona.* That, on the 2d of April, 1849, Bone, the defendant, having filed an affidavit that said bank, by Freeland and Murdoch, her assignees, had assigned to him the said judgment against Compton, and suggesting that said Penelope was indebted to the estate of said Ducker, caused a garnishment to issue against her, to answer, at April term, 1849, in what amount she was indebted to said Ducker's estate,

McGill et al. *v.* Bone.

which was served on her on the 14th April, two days before the return day. That she answered said garnishment on the 18th April, admitting an indebtedness of between $10,000 and $20,000. That the answer was filed the same day, and judgment given upon it, by the circuit court, against her, in favor of Bone, the assignee, for $10,000. That she prosecuted a writ of error to reverse this judgment, which was affirmed against her and cocomplainants, who were sureties on her writ of error bond, at the January term, 1850, of the high court of errors and appeals, with damages and costs.

Penelope McGill then filed her bill in the southern district chancery court, alleging that the judgment of Bone against her was obtained by fraud, and through a mistake on her part, and praying that it may be decreed to be without any consideration and void, and that an injunction for perpetual relief be granted her. All this was denied in the answer of Bone.

The court below, on motion, dissolved the injunction, when an appeal was prayed to this court.

*John B. Coleman* for appellants.

That courts of equity have full and unlimited jurisdiction to grant relief against the consequences of mistake, arising either from accident, ignorance, surprise, or misplaced confidence, is not and cannot be controverted. 1 Story, Eq. 121.

But it is contended, by the counsel of Bone, that the mistake of Mrs. McGill was a mistake in matter of law alone, and that equity can only relieve against mistakes in matter of fact. We deny both these propositions.

The mistake of Mrs. McGill was a mistake in matter of fact; and it arose from ignorance and surprise. It was a mistake in matter of fact, because, though she was indebted to the estate of John Ducker, she was not indebted to the particular estate of John Ducker, in reference to which she was called upon to answer.

By the garnishment, she was required to answer in what amount she was indebted to the estate of John Ducker. There were two estates of John Ducker, totally distinct and unconnected. To one of those estates she was indebted, to the other

McGill et al. *v.* Bone.

she was not. The garnishment had reference in fact but to one of these estates, and to that one to which she owed nothing.

I am aware that Judge Story is a strong advocate for the broad doctrine, that mistakes in matters of law cannot be relieved against. A reference to his own treatise on equity, will nevertheless show, that the authorities which he cites do not sustain him by any means with unanimity. 1 Story, Eq. 129–145, §§ 116–120, and n. 2; Ib. 121–130; Ib. 149, § 134; Ib. 153, § 138; *Hunt* v. *Rousmanier*, 8 Wheat. 174; 5 Cond. R. U. S. 409–412.

It will thus be seen, that the greatest extent to which any of the courts go, in sustaining the old doctrine is, that they will not relieve against a clear, plain mistake of law, stripped of all other circumstances.

We contend that all the labor and ingenuity of Bone has been exerted in vain, and can avail him nothing, for the reason that this case must be determined, must stand or fall upon the facts and circumstances that existed at the time the judgment was rendered; not upon facts and circumstances that Bone has manufactured since. 7 S. & M. 724.

We allege, and I think we have shown, that the judgment which Bone obtained against Mrs. McGill, on the 19th of April, 1849, was obtained through a mistake on her part, and that but for that mistake, he could not have recovered it.

*H. T. Ellett* for appellee.

Mr. Justice HANDY delivered the opinion of the court.

The foundation upon which the equity of the complainants in this case rests is, first, that in making the answer to the garnishment against her, as a debtor of the estate of John Ducker, in Mississippi, she acted under a mistake of fact, and supposed that, as she was indebted to an administrator of Ducker, appointed in Louisiana, this rendered her likewise indebted to the administrator in this State; secondly, that the answer was obtained by Bone by assurances, that if she would make the answer admitting her indebtedness, it should not be used to her prejudice, and that his only object in obtaining it, was to com-

McGill et al. *v.* Bone.

pel the administrator in Louisiana to settle his claim against the estate.

Upon the first point, it is distinctly denied by the answer of the appellee, that the appellant was ignorant of the fact that she was indebted to the administrator in Louisiana, and not to the administrator in Mississippi, or that she acted under the misapprehension stated. There is no proof to show such a state of things; and on the contrary, the facts appearing in the bill go strongly to show that she could not have acted as she did, under ignorance or misapprehension as to the party to whom she was indebted. Her bill shows that she purchased property from the administrator in Louisiana, and gave her notes to him for a large amount, on which a suit was pending in behalf of that administrator in Louisiana against her, at the time she made the answer to the appellee's garnishment, in which suit, judgment was rendered against her, a few days after her answer to the garnishment, for some $60,000. It is incredible, that a party contracting for herself to such heavy amounts, was ignorant of the fact to whom she was indebted, when the creditor had actually sued her, and had nearly prosecuted his suit to judgment. If under such circumstances she could have supposed that she was indebted to the administrator in Mississippi, and acted on the belief that both administrations were of the same estate, and that if she paid her indebtedness to the administrator in Mississippi, instead of the administrator in Louisiana, it would be valid, and she would be protected; still she would not be permitted to come into equity for relief against such a mistake, without showing that she was likely to be injured in consequence of it; and no such state of case is presented here. This brings up the second ground relied on.

It is alleged, that she made her answer by the solicitations of the appellee. This is denied by the answer, and is not sustained by proof. She alleges that she acted on his assurances, that he only desired to coerce payment of his claim against Ducker's estate from the administrator in Louisiana, and that if judgment was rendered against her on her answer, it should not be used to her prejudice. If this were admitted, she would have no right to come into equity for relief against the judg-

38 *

ment, until it was attempted to be used to her prejudice. How could it be used to her prejudice, and what must have been in contemplation when she acted upon that assurance? It certainly could not be to her prejudice that she was paying what she admitted to be a just debt due by her to Ducker's estate. She could only be prejudiced when, by paying the appellee's judgment, she would still be liable to pay the money again on the debt which she properly owed to the administrator in Louisiana, and whose debt would not be discharged by the payment on account of the estate in Mississippi. In no other way is it shown, that she could have been prejudiced by the payment of the appellee's judgment. But it is clearly shown by the proofs exhibited in the case, that she is in no danger from the claim of the administrator in Louisiana. That administrator agrees and binds himself in writing to credit the judgment he had recovered in Louisiana, with the money which the appellant should pay on the judgment against her in Mississippi; and the appellee authorizes his attorney to retain the money paid on his judgment by the appellant, until the appellant should receive due credit on the judgment against her in Louisiana for the amount paid. These and other arrangements made between the administrator and the appellant, for the appellant's security, amply protected her against any loss, by the only means by which it can be supposed any loss or prejudice was contemplated by the parties.

But, it is said, these steps for the appellant's security were all taken since the judgment was rendered against her. This constitutes no valid objection. If it be true, as the appellant alleges, that the appellee agreed that the judgment should not be used to her prejudice, and that this had reference to the adverse claim of the administrator in Louisiana, these measures of security were within the contemplation of the appellee's agreement, and he was at liberty, if not under an obligation, to take such future steps as would prevent the payment of his judgment by the appellant from working an injury to her. The appellant certainly has no right to complain that the appellee has taken such steps as that the payment of his claim by her, at the time when it is sought to be enforced, can be made with-

out any injury or loss to her. It is a debt justly due by her, and one which, under the circumstances existing, she shows no just reason for resisting in a court of equity. All injurious consequences of her alleged mistake are obviated, and she is left without just excuse for refusing payment.

Under all the circumstances of the case, as presented by the record, we 'are of opinion, that the decree of the chancellor should be affirmed.